# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 59861-2-II |
| SHANE DANIEL BREWER, | UNPUBLISHED OPINION |
| Petitioner. | |

CHE, J. — Shane Daniel Brewer broke into a sporting goods store and stole four guns. Brewer later murdered Loren VerValen in VerValen's home using one of the stolen guns and also stole his car. Police found VerValen's car parked in Brewer's cul-de-sac.

The State charged Brewer with first degree murder, first degree robbery, three counts of first degree unlawful possession of a firearm, first degree burglary, four counts of theft of a firearm, second degree malicious mischief, and first degree possessing stolen property. The murder, robbery, and burglary charges all had firearm sentencing enhancements. A jury convicted Brewer of 10 charges including the burglary, but it could not reach a verdict on the first degree murder or first degree robbery charges. At a second trial, a jury convicted Brewer of first degree murder and first degree robbery.

Brewer appealed, arguing in part, that insufficient evidence supported his conviction for first degree burglary and the associated firearm sentencing enhancement. We affirmed his convictions and sentence.

Brewer then filed this timely personal restraint petition (PRP) arguing that the interests of justice require we revisit whether sufficient evidence supported his conviction for first degree

burglary and the associated firearm sentencing enhancement. He also argues that his convictions for unlawful possession of a firearm violate the Second Amendment, and that those convictions must also be reversed because the State failed to allege or prove that he knew he was prohibited from possessing a firearm, which Brewer contends is an essential element of the crime. Brewer further argues that he received ineffective assistance of counsel based on counsel's failure to challenge the search warrant of his residence. He additionally argues that the trial court erred by admitting Evidence Rule (ER) 404(b) evidence at the second trial, excluding evidence of the victim's drug dealing, and denying his right to present a defense. Finally, he argues that the cumulative prejudice of these alleged errors require reversal.

We disagree with all of Brewer's claims and deny his petition.

FACTS

I. BACKGROUND

Shane Daniel Brewer was friends with VerValen's roommate, Alex Seals, and knew that VerValen bought and sold stolen goods. *State v. Brewer*, No. 55821-1-II, slip op. at 2 (Wash. Ct. App. Feb. 22, 2023) (unpublished).[1] Late on the night of December 20, 2018, Brewer told VerValen's roommate in a social media message that he had "plan[s] . . . Like [a] big p[a]yday." *Id*. (alterations in original). Hours later, on December 21, Brewer broke into a sporting goods store and stole four guns and several boxes of ammunition. Around 6:00 a.m. that same morning, Brewer sent VerValen's roommate a message on social media asking if VerValen "still want[ed] brand new clean things." *Id*. at 3 (alteration in original).

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2055821-1-II%20Unpublished%20Opinion.pdf. We adopt the facts as stated in *Brewer,* No. 55821-1-II.

Police officers visited VerValen's property three times the following day, trying to contact Seals in an unrelated matter. The first visit was a little before 6:00 a.m. Police arrived for the second visit around 8:30 a.m. On that visit, a police officer saw the driver's door of VerValen's Ford Mustang was open and the car was filled with items, including a chainsaw, toolkit, and table saw. The officer knew the silver Mustang with black stripes was VerValen's because of an encounter the day before. At 9:00 a.m. Brewer sent a social media message to a friend stating that he was "in a bind" and "need[ed] the fuzz out of here." *Id.* (alteration in original). Police left VerValen's house around 9:15 a.m.

Police visited VerValen's home for the third time shortly before noon. On this visit, police met VerValen's girlfriend, who entered VerValen's house and discovered his body in his bedroom. The cause of death was three gunshot wounds to the torso. Seals, who was a person of interest in the case, had an alibi for the morning of the murder and voluntarily contacted police to clear his name.

VerValen's house had been ransacked and a surveillance system inside was missing. VerValen's Mustang was also missing. A Honda registered to Brewer's parents was parked in front of the house. Brewer's father told police that Brewer had been driving their Honda. The Honda was not present when police visited the property earlier that morning and VerValen's girlfriend did not recognize it. Law enforcement requested a warrant to search the Honda, but was denied.

When police contacted Brewer, he told police that he had spent the night of the murder drinking with VerValen's neighbor and left his car overnight to avoid driving drunk. The neighbor denied knowing or ever meeting Brewer.

3

Detective Carrie Nastansky received a call from one of Brewer's neighbors whose boyfriend had recently spoken with Brewer. The neighbor told Detective Nastansky that Brewer had asked her boyfriend how to remove the VIN from a vehicle he had stolen and claimed he "had to kill a guy to get it." PRP App. at 63. Upon receiving that tip, police went to Brewer's home where they found a Mustang they believed to be VerValen's parked in the cul-de-sac where he lived. Based on this information, Detective Nastansky requested a search warrant for the Mustang and Brewer's house and garage.

The warrant judge found that probable cause existed to believe the Mustang was VerValen's and authorized a search of the vehicle given the appearance of the stolen Mustang at Brewer's address and fact that Brewer had been dishonest with police about why the Honda he had been driving had been at VerValen's home. The trial court also authorized a search of Brewer's home based on Brewer's comments to the neighbor and the presence of the stolen Mustang at Brewer's address.

Inside Brewer's home, police found two guns, ammunition, and a pair of bolt cutters in Brewer's garage. They also found price tags linking the guns to the sporting goods burglary. When police called Brewer, he said he was working in Seattle and gave them his boss's contact information. However, Brewer's boss told police that Brewer was at home working on a truck.

When Brewer proved elusive, police obtained warrants to track two phones associated with him. The live tracking of Brewer's phones led police to a house owned by some of Brewer's friends. Brewer's Honda was at the house and police acquired a warrant to search it, finding face coverings and ammunition. A third gun from the sporting goods burglary was found

hidden in the house after the owner consented to a search. This gun was later identified as the gun used to murder VerValen.

A K-9 unit located Brewer in the woods near the house. He was carrying two backpacks of camping gear and two phones. Brewer told police that VerValen had sold him the Mustang, but Brewer never produced a bill of sale. One of Brewer's phones had been reset and another had been damaged so law enforcement was not able to obtain any information from either device.

## II. FIRST TRIAL

The State charged Brewer with 12 counts, including first degree murder and first degree robbery related to VerValen, as well as first degree burglary and three counts of first degree unlawful possession of a firearm related to the sporting goods store. Firearm sentencing enhancements were alleged on the murder, robbery, and burglary charges.

The State moved in limine to prohibit Brewer from referring to other suspect evidence without a prior finding by the trial court that the other suspect evidence is established by proper foundation. Brewer opposed the motion, arguing that evidence that Seals was responsible for VerValen's murder was admissible because Seals had motive, opportunity, and connection to the crime. The trial court denied the State's motion in limine without prejudice.

During trial, Brewer attempted to introduce evidence suggesting that VerValen was dealing drugs out of his home. VerValen's neighbor, Kenneth Parker, testified:

> [BREWER]: Mr. VerValen's residence, I think you described it as a high-traffic residence.
>
> [PARKER]: Absolutely.
>
> [BREWER]: What do you mean by that?

[PARKER]: There's just a lot of high activity going on from a lot of people in and out all hours of the morning.

[BREWER]: Early in the morning, right?

[PARKER]: Early in the morning, late at night.

[BREWER]: Okay. Cause you concern?

[PARKER]: Absolutely.

[BREWER]: Why?

. . . .

[PARKER]: It was just concerning to me. I mean, I'm a disabled man. There's a lot of people in and out of there, and to me it was obvious what was going on there.

[BREWER]: Okay.

[PARKER]: And it was just concerning to me living so close.

[BREWER]: Right. Did you believe it was a drug house?

. . . .

[STATE]: Objection, Your Honor.

[TRIAL COURT]: Sustained. The jury is instructed to disregard that last question and answer.

3 Rep. of Proc. (RP) (Feb. 24, 2020) at 454.

The following day, the parties and the court discussed the issue of introducing evidence of drug dealing. The State moved to prohibit any references to drugs as more prejudicial than probative under ER 403. Brewer opposed the State's motion, arguing that the evidence was relevant. "I don't have to tell this court people who sell drugs inherently subject themselves to crime. Drug dealers often get shot. Drug dealers often get burgled. How is that not relevant to

6

who committed this murder if other people are in the house immediately preceding the murder?"
3 RP (Feb. 25, 2020) at 528.

The trial court ruled that any evidence VerValen was engaged in the practice of dealing drugs was prohibited, reasoning that even if relevant, the evidence was more prejudicial than probative. The trial court clarified that the parties could inquire of witnesses whether they were using drugs at the time they witnessed anything to do with the case. To this end, Brewer elicited testimony from a witness that he did not have any drugs in his possession when he went to VerValen's home on the night of the murder, did have drugs in his possession after he left VerValen's home, and used those drugs that morning, which could have impaired his ability to recall events.

The trial court instructed the jury that to convict Brewer of first degree unlawful possession of a firearm, the State needed to prove beyond a reasonable doubt that Brewer knowingly had a firearm in his possession or control, that Brewer had previously been convicted of a serious offense, and that the ownership or possession of the firearm occurred in the State of Washington. Brewer and the State stipulated that Brewer was previously convicted of a serious offense.

In closing, Brewer conceded guilt to some charges but argued that multiple bases existed to have a reasonable doubt that he murdered or robbed VerValen. Specifically, Brewer argued that the evidence suggested Seals murdered VerValen.

The jury convicted Brewer of first degree burglary of the sporting goods store and entered a special verdict finding that he was armed with a firearm at the time of the burglary. The jury also convicted Brewer of three counts of first degree unlawful possession of a firearm,

four counts of theft of a firearm, second degree malicious mischief, and possession of a stolen

vehicle. The jury could not reach a verdict on the murder or robbery charges. The trial court

declared a mistrial on those two charges.

### III. SECOND TRIAL

The State re-tried Brewer on the first degree murder and first degree robbery charges.

During motions in limine at the second trial, the parties largely relied on the trial court's rulings

in the first trial. Brewer specifically acknowledged the trial court's previous ruling regarding

other suspect evidence, noting that the trial court granted Brewer's motion with respect to

evidence involving Seals.

The parties agreed to exclude any reference to the prior trial. Brewer moved to limit

evidence under ER 404(b) related to the charges in the first trial. Specifically, Brewer asked the

trial court to exclude any reference to Brewer being charged with the sporting goods burglary,

theft of firearms, or possessions of firearms unlawfully and any verdicts in that regard. Brewer

further moved to exclude the physical admission of the firearms and ammunition that were

recovered in Brewer's garage. Brewer suggested that the State be allowed to introduce

photographs of the stolen guns, acknowledging that the guns and ammunition were relevant to

the State's case but arguing that the prejudice of the physical items being present in court

outweighed their probative value.

The trial court granted Brewer's motion in part. The trial court acknowledged that there

was some prejudice to Brewer if the court were to allow the State to introduce evidence of the

burglary, the theft of the firearms, the possession of the firearms, and all of the other acts of

Brewer. But the trial court found that the probative value outweighed the prejudice, explaining

It is clear to the court . . . that this case involves a stream of events that occurred over a relatively short period of time. And the State's theory, obviously, is that Mr. Brewer committed this burglary, stole the firearms, and then used one of the stolen firearms to commit the homicide. So the State's proffered evidence with respect to the commission of the burglary and the possession of the firearms and Mr. Brewer's proximity to those firearms and the ammunition that was allegedly stolen are relevant to opportunity, plan, identity, preparation, and knowledge. So those exceptions to the presumption that other acts or crimes are inadmissible do exist in this case and the probative value outweighs the prejudice to Mr. Brewer.

RP (Apr. 5, 2021) at 32. The trial court further found that the prejudicial impact of the firearms being physically introduced into evidence outweighed the probative value.

Accordingly, the trial court ruled that the State would be allowed to examine witnesses with respect to the firearms and ammunition and that the firearms could be shown to the witness, but that the firearms would be shielded from the jury and not shown to the jury. The trial court ruled that the firearm used to murder VerValen could be admitted.[2] The trial court also ruled that Brewer's prior convictions were excluded.

In closing arguments, defense counsel again conceded that Brewer had burglarized the sporting goods store and stolen VerValen's property. But counsel argued that VerValen's roommate, Seals, killed VerValen before Brewer arrived at VerValen's house.

The jury convicted Brewer of first degree murder and first degree robbery. The jury also entered a special verdict finding that Brewer was armed with a firearm during the commission of both offenses. The court merged the first degree murder and first degree robbery convictions.

---

[2] During the second trial, the court admitted Exhibit 15, the Ruger Mini-14 .223 caliber rifle used in VerValen's murder.

IV. POST-CONVICTION REVIEW

Brewer appealed, arguing, in part, that there was insufficient evidence to support his conviction for first degree burglary and the associated firearm sentencing enhancement. We disagreed, explaining:

> Brewer . . . disputed whether he was armed with a deadly weapon as needed to find him guilty of first degree burglary. Brewer's argument focused on the trigger locks that prevented the stolen guns from being fired. But Brewer committed the burglary with the aid of bolt cutters that he used to cut through a steel gun rack. The trigger locks were plastic. Viewing the evidence in the light most favorable to the State, a reasonable factfinder could conclude Brewer could have easily cut the trigger locks off with the bolt cutters. And a detective testified that trigger locks can be opened, even without a key.
>
> In sum, the fact that the trigger locks would have temporarily hampered firing the guns does not prevent a finding that Brewer was armed. We hold that there was sufficient evidence for a reasonable jury to find that Brewer was armed with a deadly weapon for purposes of first degree burglary.

*Brewer*, No. 55821-1-II, slip op. at 17-18. We affirmed Brewer's convictions and sentence.

Brewer filed this timely personal restraint petition.

ANALYSIS

Because society has a significant interest in the finality of criminal convictions, collateral attacks on convictions made through a PRP are only allowed in extraordinary circumstances. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022). To obtain relief through a PRP, the petitioner has the burden to prove either "(1) a constitutional error that resulted in actual and substantial prejudice or (2) a nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 306, 422 P.3d 458 (2018) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004)). The petitioner must

make either of these showings by a preponderance of the evidence. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013).

I. SUFFICIENCY OF THE EVIDENCE: FIRST DEGREE BURGLARY WHILE ARMED WITH A FIREARM

Brewer first argues that there was insufficient evidence for a jury to convict him of first degree burglary or find that he was armed with a firearm during the burglary. Brewer acknowledges that the sufficiency of the evidence supporting these convictions was already addressed on direct appeal but contends that the interests of justice require reconsideration of the issue. We disagree.

A personal restraint petitioner may not renew a ground for relief that was raised and rejected on direct appeal unless the interests of justice require reconsideration of that ground. *In re Pers. Restraint of Knight*, 196 Wn.2d 330, 341, 473 P.3d 663 (2020). The interests of justice are served by reconsidering a ground for relief if there has been an intervening material change in the law or some other justification for having failed to raise a crucial point or argument on appeal. *Yates*, 177 Wn.2d at 17. This is a narrow exception to the general rule against relitigation, and any change in the law must be clearly established. *See Knight*, 196 Wn.2d at 342 (Court of Appeals decision on double jeopardy claims was not an intervening change of law). A "new" ground for relief is not created merely by supporting a previous ground with different factual allegations or different legal arguments, or by couching the claim in different language. *Yates*, 177 Wn.2d at 17.

Brewer cannot show either an intervening material change in the law or any justified failure to raise a crucial point or argument on appeal. *Yates*, 177 Wn.2d at 17. Brewer claims that relitigation of this issue is necessary because our opinion in his direct appeal conflicts with

*State v. Brown*, 162 Wn.2dd 422, 173 P.3d 245 (2007).  But *Brown* was decided well before his direct appeal and is not an intervening material change in the law.  Essentially, Brewer asks us to revisit the issue based on his contention that our opinion was incorrect.  The proper avenue for review of our opinion was to file a petition for review by the Supreme Court, which Brewer did not do.  RAP 13.1, 13.6.

Nor is the fact that Brewer failed to file a petition for review sufficient justification for disturbing the finality of our decision on this issue.  Brewer complains that his appellate counsel did not file a petition for review of our opinion with the Supreme Court.[3]  But on March 9, 2023, after our opinion in his direct appeal was filed, Brewer, as a self-represented litigant, filed a motion for an extension of time to file a petition for review, which the Supreme Court granted.  The Supreme Court allowed Brewer over three months to file his petition for review, but Brewer never did.  Accordingly, on June 27, 2023, the Supreme Court informed Brewer that it set the case on a motion calendar to consider a clerk's motion to dismiss the case for failure to file a petition for review.  Brewer failed to respond or file a petition for review, and the Supreme Court dismissed the case.  Brewer did not move to modify that decision.  Thus, even if Brewer's counsel did not file a petition for review, Brewer had the opportunity to get this case before the Supreme Court; he failed to follow through.  Brewer cannot now claim that the lack of Supreme Court review of his appeal—because neither he nor his counsel filed a petition for review— provides a basis for this court to again review his insufficiency of the evidence claim for his burglary conviction and the associated firearm sentencing enhancement.

---

[3] To the extent Brewer contends he received ineffective assistance of appellate counsel based on counsel's failure to file a petition for review of his direct appeal, he fails to show that, even if such petition were granted, the petition would have been successful.

Brewer also contends that the additional length of his sentence due to the firearm sentencing enhancement—120 months—justifies relitigation of the issue. Based on Brewer's conviction, criminal history, and the firearm sentencing enhancement special verdict finding, 120 months confinement is the requisite term added to his sentence and does not support relitigation of an issue already addressed on the merits on direct appeal.

Brewer fails to carry his burden to show that the interests of justice would be served by relitigation of his sufficiency of the evidence argument, and we decline to do so.

## II. CONSTITUTIONALITY OF THE FIREARM STATUTE

Brewer argues that Washington's unlawful possession of a firearm statute is unconstitutional as applied to him pursuant to the Second Amendment and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022). We disagree.

We recently rejected an identical argument in *State v. Bonaparte*, 32 Wn. App. 2d 266, 554 P.3d 1245 (2024), *review denied*, 4 Wn.3d 1019 (Apr. 2, 2025).[4] There, we rejected the appellant's claim that his conviction for unlawful possession of a firearm in the first degree based on a predicate serious offense violated the Second Amendment as applied. We concluded that "the framework articulated in *New York State Rifle* of the government's need to demonstrate that a firearm restriction is 'consistent with this Nation's historical tradition' applies to restrictions on a law-abiding citizen's right to bear arms and is simply not applicable here because Bonaparte has been convicted of a felony, first degree assault, which is a serious offense." *Id*. at 276. The Washington Supreme Court denied Bonaparte's petition for review.

---

[4] Brewer erroneously describes *Bonaparte* as a Division One case. But *Bonaparte* was decided by the same panel as this case; Judge Lee authored the opinion, and Judge Maxa and Judge Che concurred.

Brewer essentially contends that our opinion in *Bonaparte* was incorrect. We disagree. And as the Washington Supreme Court denied Bonaparte's petition for review, *Bonaparte* remains good law and is instructive here.

As in *Bonparte*, Brewer was convicted of a violent offense. RCW 9.94A.030(58)(viii). Accordingly, as in *Bonaparte*, the historical tradition test articulated in *New York State Rifle* does not apply here. *See also State v. Koch*, 34 Wn. App. 2d 232, 243, 567P.3d 653 (2025) (holding that the Second Amendment does not apply to nonviolent felons); *State v. Olson*, 33 Wn. App. 2d 667, 565 P.3d 128 (2025), *review denied*, 4 Wn.3d 1038 (Apr. 6, 2025) (holding that prohibiting people convicted of nonviolent felonies from possessing a firearm does not violate the Second Amendment); and *State v. Hamilton*, 33 Wn. App. 2d 859, 565 P.3d 595 (2025), *review granted*, 4. Wn.3d 1206 (Aug. 6, 2025) (presuming that the Second Amendment applies to felons and nonetheless holding that Washington's statutes prohibiting felons from possessing guns is constitutional).

Accordingly, we hold that Brewer's conviction for unlawful possession of a firearm does not violate the Second Amendment.

### III. KNOWLEDGE THAT FELON STATUS PROHIBITED FIREARM POSSESSION

Brewer argues that his convictions for unlawful possession of a firearm must be dismissed because the State did not allege or prove that he had knowledge that his status as a felon prohibited him from possessing a firearm. Brewer contends that knowledge that his felon status prohibited him from possessing a firearm is an essential element of the unlawful possession of a firearm statute. We disagree.

Division One addressed a similar argument in *State v. Nielsen*, 14 Wn. App. 2d 446, 452, 471 P.3d 257 (2020). There, Nielsen argued that in order to support a conviction for attempted unlawful possession of a firearm, the to-convict instruction needed to inform the jury that the State needed to prove that Nielsen had the specific intent to unlawfully possess a firearm, not just possesses a firearm. *Id*. The court rejected this argument, explaining that Nielsen's argument amounted to "asking for the instructions to include an element of the crime of unlawful possession of a firearm that simply does not exist." *Id*. As the *Nielsen* court acknowledged, there are two elements of the crime of unlawful possession of a firearm: (1) the person knowingly possesses a firearm, (2) after having been previously convicted of a serious offense. RCW 9.41.040(1). "The crime of unlawful possession of a firearm does not require that the defendant have actual knowledge of the illegality of firearm possession." *Nielsen*, 196 Wn.2d 1035 at 452. The Washington Supreme Court denied Nielsen's petition for review. *Id*.

We agree with the reasoning in *Nielsen*. Brewer stipulated that he committed a prior serious offense, which made his knowing possession of a firearm illegal. We decline Brewer's invitation to read a third essential element into RCW 9.41.040(1). Accordingly, Brewer's claim fails.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Brewer argues that he received ineffective assistance of counsel based on counsel's failure to move for a *Franks*[5] hearing to challenge the search warrant for his house. Brewer contends that his counsel should have moved to suppress the evidence recovered in the search of

---

[5] *State v. Franks*, 438 U.S. at 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

his home because the warrant application affidavit included a false statement that was made with reckless disregard for the truth. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee defendants the right to effective assistance of counsel. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.2d 1045 (2017). To be entitled to collateral relief in a PRP through an ineffective assistance of counsel claim, the petitioner must show that counsel's performance was deficient and that the deficient performance was prejudicial. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). Deficient performance is performance falling "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)). The petitioner alleging ineffective assistance must overcome a strong presumption that counsel's performance was reasonable. *Id*.

When a PRP raises an ineffective assistance of counsel claim, we apply the same prejudice standard as we would on direct appeal. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). To show prejudice, the petitioner must prove there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Kyllo*, 166 Wn.2d at 862.

If an appellant argues that their trial counsel provided ineffective assistance by failing to move to suppress evidence, the appellant will prevail only if they show "that the motion likely would have been granted." *State v. D.E.D.*, 200 Wn. App. 484, 490, 402 P.3d 851 (2017). "Not every possible motion to suppress has to be made," and "[c]ounsel may legitimately decline to

move for suppression on a particular ground if the motion is unfounded." *State v. Nichols*, 161 Wn.2d 1, 14, 162 P.3d 1122 (2007).

Even if an appellate court concludes that trial counsel's performance was deficient, the appellant must still prove prejudice. An appellant must show that, but for counsel's deficient performance, "there is a reasonable probability . . . the outcome of the proceeding would have been different." *Id*. at 8. For an ineffective assistance claim based on failure to move to suppress, "[a]n appellant demonstrates actual prejudice when [they] establish[ ] from an adequate record that the trial court likely would have granted a suppression motion." *State v. Abuan*, 161 Wn. App. 135, 146, 257 P.3d 1 (2011).

In *Franks,* the United States Supreme Court held that after a search warrant has been issued, a defendant is entitled to an evidentiary hearing (a "*Franks* hearing") regarding the veracity of factual allegations in the search warrant affidavit if (1) the defendant makes a substantial preliminary showing that the affiant knowingly and intentionally or with reckless disregard for the truth included a false statement in the warrant affidavit, and (2) the allegedly false statement is necessary to the finding of probable cause. 438 U.S. at 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

Here, Brewers fails to make a substantial preliminary showing that the deputy who applied for the search warrant included a false statement in the warrant affidavit knowingly and intentionally or with reckless disregard for the truth. Brewers specifically argues that when Detective Nastansky told the warrant judge "the 2007 Ford Mustang is here at Shane Brewer's house" she made a false statement with reckless disregard for the truth because her report reveals that the Mustang was parked "at the end of the cul-de-sac, near Shane's house." PRP App. at 63,

56. Brewer contends that if Detective Nastansky researched parcel records, she would have discovered that the cul-de-sac served multiple properties. We are not persuaded that the car being parked in the cul-de-sac outside of Brewer's home is materially different from being at his house for purposes of the search warrant affidavit such that Detective Nastansky made a false statement with reckless disregard for the truth.

Moreover, the allegedly false statement was not necessary to the finding of probable cause. The warrant judge concluded that probable cause supported issuing a search warrant for Brewer's home based on the fact that Brewer had been dishonest with the police about why his car was at VerValen's home, the fact that Brewer had reportedly asked about how to remove the VIN from a stolen vehicle in order to sell it and stated that he had "killed a guy to get it," and the fact that the Mustang was found outside of Brewer's home. PRP App. at 63. Probable cause for the search warrant of Brewer's home was not based solely on the fact that the Mustang was at or near his home. Rather, it was all the circumstances combined linking Brewer to VerValen and the Mustang.

Brewers fails to show that Detective Nastansky made a false statement with reckless disregard for the truth or that the statement was necessary to the finding of probable cause. As a result, Brewers cannot show that the trial court would have granted a *Franks* hearing, much less that it would have suppressed the evidence following a *Franks* hearing. Accordingly, Brewer's ineffective assistance of counsel claim fails.

## V. ER 404(b) EVIDENCE

Brewer also argues that the trial court erred by admitted ER 404(b) evidence of the sporting goods burglary at the second trial. We disagree.

We review the trial court's decision to admit or exclude evidence of misconduct under ER 404(b) for an abuse of discretion. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). A trial court's error in admitting evidence is reviewed under the standard for nonconstitutional error. *State v. Gunderson*, 181 Wn.2d 916, 926, 337 P.3d 1090 (2014). A nonconstitutional error is harmless where there is no reasonable probability that the error materially affected the verdict. *Id*.

Under ER 404(b), evidence of prior misconduct is categorically barred when it is offered "for the purpose of proving the character of a person in order to show that the person acted in conformity with that character." *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). The same evidence, however, may be admitted for proper purposes that include but are not limited to "'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.* (quoting ER 404(b)). "ER 404(b) is not designed 'to deprive the State of relevant evidence necessary to establish an essential element of its case,' but rather to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged." *State v. Foxhoven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007) (quoting *State v. Lough*, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)).

Before admitting evidence of prior misconduct, a trial court must, on the record, "'(1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" *Gresham*, 173 Wn.2d at 421 (quoting *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

Here, the trial court properly conducted the requisite analysis on the record before exercising its discretion to admit relevant, probative evidence of the sporting goods burglary while excluding other evidence where the probative value of the evidence was substantially outweighed by the danger of its unfair prejudice. The trial court found, based on the verdicts from the first trial, prior misconduct. The trial court then determined that the evidence of that prior misconduct was relevant to the State's theory that Brewer committed the burglary, stole the firearms, and then used one of the stolen firearms to commit the murder shortly thereafter. The evidence was not admitted to show that Brewer acted in conformity with bad character but to show opportunity, plan, identity, preparation, and knowledge, which are all valid exceptions to ER 403(b). Accordingly, we hold that the trial court did not abuse its discretion by admitting relevant, probative evidence of the sporting goods burglary.

## VI. EXCLUSION OF EVIDENCE OF VERVALEN'S ALLEGED DRUG DEALING

Brewer also argues that the trial court abused its discretion by excluding evidence that VerValen was a drug dealer and that the exclusion of this evidence denied him his right to present a defense. We disagree.

The United States Constitution and the Washington State Constitution guarantee defendants the right to present a defense. U.S. Const., amend. VI, XIV; Wash. Const., art. I, § 3; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994). To determine whether the exclusion of evidence violates a defendant's constitutional right to present a defense, we engage in a two-part analysis. *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019); *State v. Clark*, 187 Wn.2d 641, 648-49, 389 P.3d 462 (2017). First, we review a trial court's evidentiary rulings for an abuse of discretion. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022).

20

A trial court abuses its discretion if no reasonable person would take the view adopted by the trial court. *Id*. at 59. Second, we determine whether such rulings violated a defendant's rights under the Sixth Amendment de novo. *Clark*, 187 Wn.2d at 648-49. Generally, a defendant's right to present a defense is not violated when a trial court excludes evidence that is prejudicial to the State, only minimally probative, and can be shown through other testimony. *Jennings*, 199 Wn.2d 53 at 63-67.

A.      *No Abuse of Discretion*

As an initial matter, Brewer characterizes the excluded evidence as "other suspect evidence." We disagree with his characterization. Other suspect evidence is evidence suggesting that another person committed the charged offense. *State v. Franklin*, 180 Wn.2d 371, 381, 325 P.3d 159 (2014). At both trials, Brewers presented other suspect evidence— specifically, evidence that Seals murdered VerValen and that other individuals had access to VerValen's house around the time of the murder. But in his petition, Brewers argues that the trial court erred by excluding evidence that VerValen was dealing drugs. Whether or not VerValen was dealing drugs is not other suspect evidence.

The trial court ruled to prohibit any evidence that VerValen was engaged in the practice of dealing drugs, reasoning that even if relevant, the evidence was more prejudicial than probative. The trial court clarified that the parties could inquire of witnesses whether they were using drugs at the time they witnessed anything to do with the case. A reasonable person could have taken the trial court's view. Accordingly, we hold that the trial court did not abuse its discretion by excluding specific testimony suggesting that VerValen was dealing drugs.

B. *No Violation of the Right to Present a Defense*

Brewer contends that the trial court's rulings limiting evidence that VerValen was dealing drugs violated his right to present a defense. We disagree.

Brewer's defense theory was that Seals murdered VerValen. Contrary to Brewer's contention in his petition, Brewer was permitted to present this theory to the jury. At both trials, Brewer argued that Seals committed VerValen's murder. Brewer presented evidence that Seals was angry with VerValen, Seals threatened to kill him, Seals had access and opportunity to kill him, Seals' blood was at the residence, bullets consistent with the murder weapon were in Seals' room, and none of Seals' property was stolen during the murder. Brewer was also permitted to introduce evidence that other individuals were in and out of VerValen's residence around the time of the murder.

As previously discussed, evidence that VerValen was engaged in drug dealing is not other suspect evidence. Nor was it necessary for Brewer to present his defense theory (Seals killed VerValen) to the jury. The trial court's rulings excluding testimony about VerValen's alleged drug dealing did not prevent Brewer from arguing that Seals murdered VerValen. Accordingly, Brewer's claim that the trial court violated his right to present a defense fails.

## VII. CUMULATIVE ERROR

Finally, Brewer argues that the cumulative impact of errors at his trials denied him his right to a fair trial.

Under the cumulative error doctrine, the court may reverse a defendant's conviction when the combined effect of trial errors effectively denies the defendant his or her right to a fair trial, even if each error alone would be harmless. *State v. Lazcano*, 188 Wn. App. 338, 370, 354

No. 59861-2-II

P.3d 233 (2015). The defendant bears the burden to show multiple trial errors and that the accumulated prejudice from those errors affected the outcome of his or her trial. *Id.*

Because Brewer has failed to show multiple errors affecting his conviction, we hold that he failed to show that the accumulated prejudice of multiple trial errors affected the outcome of his trial.

CONCLUSION

We deny Brewer's petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Che, J.

We concur:

_____
Maxa, P.J.

_____
I   , J.

23